**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DONALD PIERCE                                              CIVIL ACTION

VERSUS                                                    NO. 19-138

SYSTEMS GROUP                                            SECTION "B"(5)

<u>ORDER AND REASONS</u>

For the reasons discussed below,

**IT IS ORDERED** that Defendant System Group's opposed motion for summary judgment is **GRANTED IN PART** to dismiss plaintiff Donald Pierce's discriminatory per diem claim; **DENIED IN PART** to retain plaintiff's retaliation claim; and plaintiff's related motion to strike is **DENIED.** See generally Rec. Docs. 30, 50, 68.

I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This action arises from Pierce's termination of employment with Systems Group. Rec. Doc. 1. On October 17, 2018, Plaintiff received a "right-to-sue" letter from the Equal Employment Opportunity Commission.[1] Rec. Doc. 1 at 1. Thereafter, he filed suit against his former employer on January 8, 2019 under 28 U.S.C. § 1343, alleging racial discrimination from compensating him less than white maintenance welders. *Id.* Plaintiff also bought claims for retaliatory discharge. *Id.*

---

[1] While plaintiff did not attach the right-to-sue letter to the original complaint, defendant has not challenged plaintiff's compliance with the EEOC administrative procedures in its answer or the instant motion.

Systems Group is a national company that provides services for concrete, piping, mechanical, and structural steel erection for its clients. Rec. Doc. 30-2. NuCor Steel Louisiana, LLC ("NuCor") is a client of Systems Group located in Convent, Louisiana. *Id.* It maintains a year-round contracted staff of about 20 employees at NuCor and hired additional employees prior to NuCor's annual 30-day maintenance shutdown, which began on or about June 16, 2018. *Id.* at 2.

Plaintiff was hired on April 4, 2018, as a combo welder to assist in pre-shutdown and shutdown maintenance. Rec. Doc. 30-4. He was paid $26 per hour. Rec. Doc. 30-5. Previously, he worked for Systems Group for two weeks in September 2017 in Arkansas where he was paid $24 per hour; and for another two-week period in March of 2018 in St. James Parish, Louisiana at the same hourly rate. Rec. Docs. 30-2, 30-5.

On April 18, 2018, two weeks after being hired for the NuCor job, plaintiff was issued a written warning for leaving the work site early. Rec. Doc. 30-8. Plaintiff's actions violated workplace policies listed in the employee handbook: Willful or deliberate neglect of duties, loafing on the job, and failure to follow instruction or perform assigned work is considered insubordination. Rec. Doc. 30-7 at 2 at § 19.7, 19.9, 19.10.

Less than a month later, on May 9, 2018, plaintiff was issued a Safety Observation Form because, per defendant, plaintiff could not be located on the job site again. Rec. Doc. 30-9.

A few days later, on May 17, 2018, plaintiff was issued another Safety Observation Form, documenting constant cell phone use during work hours while welding, and for lying to his supervisor. Rec. Doc. 30-15. Such conduct was in violation of both Systems Group and NuCor's policy that non-supervisory employees, like plaintiff, may never use cell phones while working. Rec. Doc. 30-13 at 2 § 34.1, 34.1.1, 34.1.6.

A few weeks thereafter, on June 5, 2018, plaintiff was cited for again using a cell phone while working on the NuCor job site. Rec. Doc. 50. According to plaintiff, as he was talking, Kevin Walker ("Walker"), plaintiff's foreman, told plaintiff to put the phone away. *Id.* at 3. Plaintiff alleges explaining what he was doing on the phone and that Walker walked off; per plaintiff, he assumed there was no problem since his work was finished. *Id.*

That same evening on June 5, 2018, plaintiff was issued another Safety Observation Form for not cleaning up at the end of the shift and being found sitting in another area using his cell phone during work hours. Rec. Doc. 30-16.

According to plaintiff, on June 6, 2018 Chris Pope ("Pope") asked him to sign the write up. Rec. Doc. 50 at 3. Plaintiff admitted being angry and gave Pope the same explanation he gave to

Walker the day prior for using the cell phone. *Id.* Thereafter, plaintiff asserts getting on a company bus to transport him to a safety meeting. *Id.*

According to plaintiff, as the safety meeting was winding up, plaintiff stated to Walker:

> Hold on. I got something to say. You're wrong. How can you tell Chris to write me up when you know my job was finished? I had nothing to do. You can see me on my phone, but you can't see these guys are messing your job up. But I see it and I fix it and that's how you gonna reward me? You reward evil for good. You can't see when these guys messing the job. I'm constantly catching their mistakes and fixing their mistakes, but y'all are not appreciative of it. Every job you give me I do it and you can't find nothing wrong with it. Why y'all constantly nit picking with me? You know I went to jail and got a sick mom and my truck is in the wrecker yard. I told you that while I was on the phone.

Rec. Doc. 50 at 4. Plaintiff alleges that after making above remarks, a superintendent informed him that if he had a family problem, he should have come to them beforehand. Plaintiff retorted, "I'm a grown man. I do not need permission to use my phone. These white guys on their phone all the time any time they feel like it." *Id.* Per plaintiff, while walking with a supervisor to discuss his issues in the office, Pope stated over the radio that plaintiff was fired. *Id.*

According to defendant, plaintiff boarded the company shuttle on June 6, 2018 to be transported to the daily safety meeting. Rec. Doc. 30-2 at 4. While on the bus, plaintiff complained aloud

about being written up for using his phone on the job and began cursing Systems Group. *Id.*

Per defendant, when Pope asked if anyone had anything else to add to the safety meeting, plaintiff began complaining about being reprimanded for using his phone. *Id.* at 5. Defendant alleges that plaintiff proclaimed that he is not in kindergarten and did not need permission to use his phone. *Id.* Defendant alleges that plaintiff threatened Pope and yelled expletives. *Id.*

Defendant filed the instant motion for summary judgment on April 28, 2020, arguing that plaintiff cannot meet its burden of proof on the Title VII claims and that any wage disparity was based on factors other than race. Rec. Doc. 30. Defendant also argues that the claim for unlawful termination is without merit because plaintiff was terminated for his obscene tirade in the safety meeting when he cursed and threatened his supervisor. *Id.* Plaintiff filed a response in opposition withdrawing his claims related to discriminatory hourly wages and a finder's fee; he nevertheless maintains his discriminatory per diem and retaliatory termination claims. Rec. Doc. 50.

Defendant filed a reply asserting Systems Group had legitimate reasons for terminating Plaintiff and that he was ineligible for per diem based on reasons other than race. Rec. Doc. 68.

## II.  **LAW AND ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All reasonable inferences must be drawn in favor of the nonmovant, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of

evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### a. <u>Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e</u>

Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of wage discrimination under Title VII, "a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.,* 554 F.3d 510, 522 (5th Cir.2008).

Plaintiff has withdrawn his claims related to discriminatory hourly wages and finder's fees. Accordingly, those claims are ordered dismissed. Plaintiff's remaining claims will be addressed individually.

### b. <u>*McDonnell Douglas* Standard for Title VII Retaliation and Discrimination Claims</u>

To make a *prima facie* case of retaliatory discharge, the employee must show that (1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge. *Tatum v. S. Co.*

*Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).

An individual's retaliation claim is evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the modified *McDonnell Douglas* framework, a plaintiff must establish each element of the *prima facie* case. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,* 482 F.3d 408, 411 (5th Cir. 2007). If a plaintiff establishes this *prima facie* case, the employer "must articulate a legitimate, non-retaliatory reason for its decision to terminate the plaintiff." *Id.* Subsequently, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct and another 'motivating factor' is the plaintiff's protected characteristic." *Id.; see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision").

   i. <u>Plaintiff's Retaliation Claim</u>

Plaintiff seeks to establish a *prima facie* case of unlawful retaliation. *See* Rec. Doc. 50. He alleges participation in a protected activity, namely complaining about the discriminatory

treatment between racial groups with respect to cell phone usage. *Id.* at 7. Shortly after engaging in that activity, he was fired . *Id.* at 8. Additionally, he relies on the *Evans* case to assert the close temporal proximity between the protected complaint and his termination are sufficient to satisfy the causation factor. *Id.*; *see Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("close timing between an employee's protected activity and an adverse action against [him] *may* provide the causal connection required. . .a lapse of four months may be sufficient to raise an inference of causation.") (emphasis added).

Defendant Systems Group argues that plaintiff has not met his burden in proving a *prima facie* case of retaliatory discharge. As basis, it states plaintiff was not engaged in protected conduct and there is no causal link between the alleged protected complaint and his termination. *See* Rec. Doc. 30-2. Defendant offers the declarations of Gary Brantley, Kevin Walker and Chris Pope, all of whom stated that plaintiff never mentioned during his outcry that his race was the underpinning for Pierce's reprimand by Pope. *Id.* at 15; *see also* Rec. Docs. 30-10, 30-12, 30-20. They collectively attest that Pierce instead declared that he was "not in Kindergarten" and didn't need permission to use his phone. *Id.* Moreover, defendant argues that plaintiff fails to prove "but for" causation between his complaint and his firing. *Id.* Systems Group relies on the *Long* case to suggest that a showing of protected

conduct does not automatically lead to an inference of unlawful retaliation if the employee would have been terminated regardless of the alleged protected activity. *Id.* (citing *Long v. Eastfield College*, 88 F.3d 300, 305 (5th Cir. 1996)).[2]

In *Long*, the Fifth Circuit reversed the lower court's decision to grant summary judgment on plaintiffs' Title VII retaliation claims. *Long*, 88 F.3d at 309. The plaintiffs' summary judgment evidence established that each filed a complaint against their supervisors, the supervisors had knowledge of the complaints, and both supervisors recommended that the plaintiffs be terminated after learning about the complaints. *Id.* at 306. Accordingly, the Fifth Circuit "ha[d] no trouble finding sufficient evidence, for prima facie case purposes, to establish a causal link between [the plaintiffs'] protected activities and [their supervisors'] recommendations." *Id.*

Notably, Pierce admits to receiving four write ups during his employment leading up to his termination. Shortly after his hiring, the first write up was issued on April 18, 2018 for insubordination by leaving work early. A few weeks later, on May 9, 2018 he was cited a second time for a similar violation of company policy when he could not be found on the job. Eight days later, he received a

---

[2] While movant's factual summary of *Long* appears somewhat lacking, that case may still provide insight by contrasting the summary judgment evidence provided by the *Long* plaintiffs to the evidence provided here by Pierce.

third violation notice on May 17, 2018. That citation was issued for lying to his supervisor and unauthorized use of a cell phone while on the job. A few weeks thereafter, on June 5, 2018 plaintiff is again cited for unauthorized use of a cell phone while on the job. One day after that fourth writeup plaintiff angrily responds to supervisors on June 6, 2018, privately and publicly, that he didn't need permission to use his cell phone. He reportedly became threatening and generally contended un-named white co-workers were not reprimanded for cell phone usage. Yet he nonetheless concludes there was no other reason for his dismissal considering the close timing of his outbursts and termination, all occurring on the same day. Thus, the plaintiff appears to rely on the supposition that the temporal proximity between his protected complaint and termination indicates retaliation *per se*.

In *Fiest*, the plaintiff was terminated two weeks after her boss was allegedly embarrassed during a legislative hearing when asked about the plaintiff's pending disability claim. *Fiest v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (affirming the lower court's decision to grant summary judgment and dismiss plaintiff's retaliation claim). Although only two weeks lapsed between the hearing and the plaintiff's termination, the Fifth Circuit held that the defendant offered a non-retaliatory explanation for her dismissal, specifically "the egregiousness of her errors at work." *Id*. at

455.  In opposing summary dismissal of the retaliation claim, plaintiff ignores prior write-ups as irrelevant and seemingly relies on the temporal proximity of termination that occurred on the same date with his complaint of disparate treatment vis a vis cell phone usage by white employees.[3] Pierce's lack of specificity on providing supportive evidence about similarly situated white co-workers, e.g. names, dates, etc., and his decision to not address the impact of prior writeups  are very troubling, but not necessarily defeating.

If this Court nonetheless found, *arguendo*, that the plaintiff made out a *prima facie* case of retaliatory discharge, the defendant is required to show a legitimate, non-retaliatory justification for terminating plaintiff's employment. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). Here, defendant asserts that plaintiff's dismissal is a result of violating Systems Group's policies against violence in the workplace. Rec. Doc. 30-2 at 16-17. In doing so, the defendant states, "Plaintiff's conduct justified, if not required, his termination especially considering he already received four written warnings and had been informed that any further violations would result in his termination." *Id.* at 17.

---

[3] Plaintiff's counsel stated he would not address prior write-ups/warnings in his opposition. That is a striking error on his part. The close proximity of prior disciplinary warnings and writeups for the same or substantially similar conduct with the sued-upon June incident are highly relevant and material.

In *Chaney*, the plaintiff brought forth a retaliation claim, alleging that he was discharged for submitting an affidavit in support of his former supervisor's race discrimination claim. *Chaney v. Orleans Public Facility Management, Inc.*, 179 F.3d 164, 167 (5th Cir. 1999). However, the Fifth Circuit held that the plaintiff failed to satisfy his burden because insubordination led to his termination as permitted by the defendant's employment policies. *Id.* at 168. Similarly, in *Byest,* the plaintiff engaged in violence against her fiancé inside of the defendant's store, which directly violated its employment policy. *Byest v. Wal-Mart Stores, Inc.*, No. 4:14-CV-0009-DMB-JMV, 2014 WL 3891295 at *4 (N.D.Miss. Aug. 7, 2014). The district court held that the plaintiff failed to show a genuine issue of material fact that her dismissal was pretextual because the defendant's "Violence-Free Workplace Policy" allowed for her termination. *Id.* at *9.

In the instant case, there is strong evidence showing defendant does not tolerate insinuated or actual threats of violence and such conduct may result in termination, particularly after repeated warnings for insubordinate conduct over a relatively brief period, including a prior warning of termination for future violations. Defendant offers an excerpt from its Employment Handbook, which enumerates examples of misconduct that may result in termination, including "[f]ighting or threatening violence in the workplace or other violations of The Systems

13

Group's Workplace Violence Policy." Rec. Doc. 30-7 at 2. It also offers the plaintiff's termination form, which made note that he should not be rehired because he was classified as "dangerous." *Id.* Similar to conduct in the *Chaney* and *Byest* cases, Systems Group's policy permitted instant termination for repetitive violations of company policy against insubordinate conduct. *Id.*

Because defendant has identified a non-retaliatory reason for plaintiff's termination, the burden shifts back to Pierce to identify evidence of pretext. To establish pretext, plaintiff may show that the employer's "proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). To establish the "real reason" behind his termination, Pierce must "produce evidence, viewed in the light most favorable to [him], that would permit a jury to believe that [the defendant's] proffered reason for firing [him] was not its true reason but simply pretext for a racially discriminatory reason." *Id.* "In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Chaney*, 179 F.3d at 168.

Although plaintiff's counsel did not separately address the issue of pretext in his opposition memorandum, the court will nevertheless look to his pleadings and attached affidavits. They

14

collectively allege that defendant's partiality toward white employees led to plaintiff's firing because white employees also engage in prohibited cell phone use. Rec. Doc. 50 at 8. To rebut the defendant's proffered justification, plaintiff offers his own signed declaration as well as a signed declaration by a former co-worker Carday Hayes. Rec. Doc. 65; Rec. Doc. 66. Both Pierce and Hayes attest that Pierce never used profanity during the safety meeting. Rec. Doc. 65 at 2; Rec. Doc. 66. Additionally, they state that Pierce never made threats against Chris Pope, claiming Pope was not present at the June 6th meeting. *Id.* Plaintiff notes that among the declarations submitted by defendant – including Pope's – only Gary Brantley testified to have heard Pierce's threat.[4] Rec. Doc. 50 at 5. Lastly, Pierce and Hayes testify that after the meeting they heard Pope direct the firing of plaintiff over a radio transmission. Rec. Doc. 65 at 2; Rec. Doc. 66.

In its reply, Systems Group characterized plaintiff's affidavit as "self-serving" to overcome their "overwhelming evidence" that his termination was based on his outburst and

---

[4] "Pierce immediately began yelling that all supervisors were stupid and that the 'field,' *i.e.* other staff, was stupid. I never heard him complain about race, just the fact that he had gotten another safety warning. Pierce cursed and stated that we could all "kiss the head of his p****." He also stated that he was going to put his foot up Chris Pope's a**." Declaration of Gary Brantley. Rec. Doc. 30-10 at 1.

As discussed by Plaintiff, the Incident Interview Forms completed by both Thomas Chrismon (Rec. Doc. 30-18) and Ryan Lyle (Rec. Doc. 30-19) makes no mention of the alleged threat. Rec. Doc. 50 at 5.

pattern of workplace misconduct. Rec. Doc. 68 at 6. Defendant argues plaintiff failed to provide evidence to support his allegation that white employees are not similarly reprimanded for cell phone use. *Id.* It further contends plaintiff fails to provide evidence to support his contention that Pope did not at least hear his alleged protected complaint, regardless of whether he was present at the meeting. *Id.* at 7. Moreover, Systems Group notes that plaintiff did not allege that Pope said anything more than "He's fired", leaving Pierce to speculate on why Pope gave that order. *Id.* Lastly, it claims plaintiff's inference that only Gary Brantley's declaration mentioned the threatening comment is misleading because the other declarations all refer to Plaintiff's use of profanity at the meeting. *Id.* at 7-8.[5]

Considering the above-reference contradicting evidence submitted by the parties, a trier of fact may reasonably find in favor of the plaintiff or defendant at this stage.

ii.  <u>Plaintiff's Motion to Strike Evidence of his Prior Write Ups</u>

Pursuant to Federal Rule of Civil Procedure 12(f), the court may, on its own, strike from a pleading any "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. Proc. 12(f)(1). Accordingly, the Federal Rule of Evidence 401 states, "evidence is

---

[5] Systems Group also questioned the reliability of Carday's signed declaration. To summarize, they allege that Carday fails to declare that he was around the Plaintiff during the events leading up to Pierce's dismissal. Rec. Doc. 68 at 8-9.

relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. of Evid. 401. The rules further empowers the court to exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. of Evid. 403.

Plaintiff moves in his opposition to summary judgment to strike any evidence of his four previous write ups of workplace misconduct. Rec. Doc. 50 at 1. Pierce alleges that evidence pertaining to his previous reprimands are wholly unrelated to his termination. *Id.*

As shown earlier, defendant alleges that plaintiff mentioned on numerous occasions in the workplace that he has sued previous employers before. Rec. Doc. 30-2. As such, Defendant has mentioned through its pleadings that its decision to terminate Plaintiff was based in part on Pierce's previous workplace infractions. *Id.* Plaintiff partially addressed one of the reprimands in his opposition memorandum. Prior workplace infractions relative to insubordination, phone usage, and threatening behavior are relevant to demonstrate a pattern of insubordination.

A rational fact-finder could find the four write-ups, as earlier described herein, constitute non-discriminatory reasons

for plaintiff's termination. While contesting admissibility, plaintiff does not dispute the receipt or substance contained in each write-up. That evidence is integral to defendant's showing of a non-discriminatory justification for terminating plaintiff.

### iii. <u>Plaintiff's Discrimination Claim Regarding Per Diem</u>

Though it was not originally set forth in his complaint, plaintiff appears to also raise a disparate treatment claim based on discriminatory per diem practices. Specifically, he claims he was promised a per diem by the defendant but was ultimately denied because of his race. Rec. Doc. 50 at 2. Defendant argues that the decision was not racially motivated because the per diem was only offered to employees who relocated. Rec Doc. 30-2 at 12. Defendant indicates that Pierce was ineligible for the per diem because he lived in Westwego, which is located about an hour away from the job site in Convent, Louisiana. *Id.* at 12-13.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (citing *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 184 (5th Cir. 1999)). Like retaliation claims, Title VII discrimination claims are also evaluated under

the *McDonnell Douglas* framework. *McDonnell Douglas Corp., 411 U.S. at 802-805.*

The Fifth Circuit has not spoken on potentially discriminatory employment practices involving per diem. However, in *Alford*, the Sixth Circuit affirmed summary judgment favoring the defendant because the plaintiff had failed to establish his prima facie case of disparate treatment based on reverse race discrimination. *Alford v. General Motors Corp., 926 F.2d 528, 532 (6th Cir. 1991).* Specifically, the plaintiff identified an African American per diem security guard who only faced a short suspension for leaving his post slightly early, but the record indicated that the plaintiff's offense of leaving his post mid-shift was far more serious. *Id.* Likewise, in *Porras*, the Ninth Circuit upheld the lower court's granting of summary judgment to the defendant because the plaintiff's belief that a similarly situated white employee received a per diem to the exclusion of Hispanic employees was based on hearsay evidence. *Porras v. Kilborn Intern., Inc., No. 94-16712, 1996 WL 32153 at *1, 76 F.3d 388 (9th Cir. Jan. 26, 1996); see Gonzales v. Smith Intern., Inc., 899 F.Supp.2d 622, 641 (S.D. Tex. 2010)* (dismissing plaintiff's disparate treatment claim because the plaintiff failed to present evidence that defendant's legitimate, non-discriminatory reason for not providing housing and a per diem was a pretext for discrimination).

Pierce offers the declaration of a former co-worker Carday Hayes alongside his own declaration, indicating that per diems were promised but were not offered to a number of African American employees. Rec. Doc. 50 at 2. Plaintiff appears to suggest – without offering any supporting evidence - that Systems Group extended per diems to its white workers only because there were no similar complaints among white maintenance workers. *Id.* Plaintiff states that he was informed by African American workers on the day he was terminated that the defendant would immediately start paying its African American employees a per diem. *Id.*

Plaintiff has not presented comparator evidence, indicating that similarly situated employees were treated more favorably. Like the plaintiff in *Porras*, Pierce merely speculates that his white counterparts were given per diems based on what he had heard from other African American workers. Rec. Doc. 50 at 2. Plaintiff made no further attempt to present evidence of a similarly situated white employee who received a per diem. Thus, plaintiff has failed to meet his burden to present tangible support for this claim.

Nevertheless, even if Pierce was able to meet his burden, the defendant has established a legitimate, non-discriminatory reason for denying a per diem to Pierce. Per Systems Group's per diem policy, only employees who have relocated for the job are eligible for this benefit. Rec. Doc. 30-2 at 12. The non-discriminatory nature of the policy can be evidenced by the plaintiff's per diem

20

receipt when he worked in Arkansas after relocating from Louisiana. *Id.* at 13; Rec. Doc. 30-26. Undisputed material evidence is presented from a chart that displays the employees who have received a per diem, on what dates, and their respective race. Rec. Doc. 68 at 3; Rec. Doc. 30-24. The chart shows that four African Americans out of the eight employees shown received a per diem between April 2018 and April 2019. *Id.* Further evidence shows that the five welders who received a per diem before plaintiff would have been eligible were not similarly situated because their positions involved different tasks and responsibilities. Rec. Doc. 68 at 3. Further, on the date that Phase I of the shut-down went into effect, plaintiff admits that eight maintenance welders – composed of seven African Americans and one Caucasian - became eligible for a per diem. *Id.* at 4.

Therefore, undisputed material evidence shows the per diem practices of the defendant were not racially motivated. As such, plaintiff fails to show that defendant's reason was pretextual, foreclosing relief on the per diem claim.

New Orleans, Louisiana this 8th day of March 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE